UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fresh Farms E Liquid LLC, Case No. 3:26-cv-2059

Plaintiff,

v. MEMORANDUM OPINION AND ORDER

Beth Tischler, *et al.*,

Defendants.

## I. Introduction and Background

This case walks a now familiar path. Fresh Farms E Liquid LLC, based in California, manufactures and sells federally legal intoxicating hemp products. (Doc. No. 1 at 17). While Fresh Farms previously sold its products in Ohio, it ceased doing so when Ohio Senate Bill 56 took effect in March 2026. (*Id.* at 17-18).

Like marijuana, hemp is derived from the Cannabis sativa L. plant, which contains three intoxicating tetrahydrocannabinol compounds ("THC") – delta-8, delta-9, and delta-10. Delta-9 is the cannabinoid most associated with marijuana, while hemp-derived products most often contain delta-8. Ohio law previously defined hemp as that plant, or any of its parts, with a concentration of no more than 0.3% of delta-9 THC, a statutory definition consistent with that found in federal law. *See* 7 U.S.C. § 1639o(1).

As relevant here, Senate Bill 56 narrowed the definition of hemp to exclude any substance with a total concentration of not more than 0.3% of any intoxicating THC compound. Ohio Rev. Code § 928.01(C). Any substance with a THC concentration greater than 0.3% now constitutes

marijuana. Ohio Rev. Code § 3719.01(M). While the cultivation and sale of marijuana generally is prohibited by federal and state law, Ohio permits companies to do so if they have obtained a license. *See* Ohio Rev. Code § 3796.10. In order to obtain and maintain a license, a company may not "dispense marijuana from, obtain marijuana from, or transfer marijuana to, a location outside of the state of Ohio." Ohio Admin. Code § 3796:6-3-01(C).

Fresh Farms joins 23 other companies who previously filed suits against 96 Ohio county and municipal prosecutor's offices, seeking to enjoin those Defendants from taking "adverse governmental actions [against Fresh Farms] for participating in this state in an otherwise federally legal market involving hemp and hemp-derived products so long as their conduct comports with federal law and valid state laws predating" Senate Bill 56. (Doc. No. 1 at 38). Fresh Farms alleges, among other things, that Senate Bill 56 has created a statutory and regulatory reality in Ohio that violates the dormant Commerce Clause of the United States Constitution by disadvantaging out-of-state companies to the benefit of in-state commerce. (*Id.* at 27-32). *See also Titan Logistics Grp. LLC v. Tischler*, Case No. 3:26-cv-1300 (N.D. Ohio), and *Delta Beverage, Inc. v. Canepa*, Case No. 3:26-cv-1793 (N.D. Ohio).

Fresh Farms moves for a preliminary injunction prohibiting Defendants from pursuing "any adverse, punitive, or other governmental action" against it, or any third parties that directly or indirectly facilitate its business, that is dependent upon Ohio's statutory definitions of marijuana and hemp as revised by Senate Bill 56. (Doc. No. 19 at 22). The State of Ohio filed a brief in opposition to Fresh Farms' motion. (Doc. No. 24). For the reasons stated below, I grant Fresh Farms' motion for a preliminary injunction.[1]

[1] Fresh Farms concluded the parties' briefing adequately stated the pertinent issues and declined to submit a reply brief. (Doc. No. 27).

## II. Discussion

### A. Laches

The State of Ohio first argues Fresh Farms is not entitled to preliminary injunctive relief because it waited too long to seek that relief and that delay caused the State prejudice because state employees invested time and resources in "preparing for and implementing Senate Bill 56's various changes." (Doc. No. 24 at 6) (citing Declaration of Andrew Makoski, Division Counsel for the Ohio Division of Cannabis Control, Doc. No. 24-1).

As I previously stated, "[a] defendant asserting laches as an affirmative defense must show '(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay.'" *Titan Logistics Grp. LLC v. Tischler*, No. 3:26-CV-1300, 2026 WL 2013939, at *2 (N.D. Ohio July 13, 2026) (quoting *Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004)) (further citation omitted).

I acknowledge that state employees spent time, effort, and other resources working to develop appropriate regulations and processes to implement and enforce the changes mandated by Senate Bill 56. But, as I previously concluded, the State of Ohio's assertion of prejudice "relies on a presumption that Senate Bill 56 is constitutional." *Titan Logistics*, 2026 WL 2013939, at *2. *See also Delta Beverage, Inc. v. Canepa*, No. 3:26-CV-1793, 2026 WL 2617770, at *2 (N.D. Ohio Sept. 4, 2026).

Because that presumption is not supported by the record as it currently stands, I conclude the State of Ohio fails to establish it was prejudiced by any delay in Fresh Farms' attempt to obtain injunctive relief.

The State of Ohio also emphasizes that the Division of Cannabis Control cannot move forward with new regulations for licensure without knowing "which provisions of [Senate Bill] 56 will be enforceable . . . [and therefore], this litigation prevents the Division from proceeding with the very rulemaking that would allow Plaintiff to enter Ohio's intoxicating hemp market." (Doc. No. 24

at 6). But Senate Bill 56 purported to eliminate Ohio's intoxicating hemp market by redefining those products as marijuana. And the State has not explained how – or, perhaps of greater relevance, why – it would draft regulations that would again distinguish between products with greater than 0.3% of delta-9 THC from those with no more than 0.3% of delta-9 THC and allow out-of-state companies to again sell cannabis products with no more than 0.3% of delta-9 THC in Ohio, all so those regulations could become obsolete by early December of this year, when congressional changes to the statutory definition of cannabis products will bring federal law into alignment with Ohio law. (*See id.* at 2).

I conclude the State's arguments are not persuasive and that the doctrine of laches does not preclude issuance of a preliminary injunction.

### B. PRELIMINARY INJUNCTIVE RELIEF

To determine whether a party is entitled to a preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, I must examine and weigh the following four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.[2] *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*).

The Constitution forbids States from adopting laws that "seek to 'build up . . . domestic commerce' through 'burdens upon the industry and business of other States.'" *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1880)). Thus,

---

[2] I conclude it is not necessary to hold a hearing on Plaintiffs' motion for a preliminary injunction because there are no disputed factual issues. *See, e.g., Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552-53 (6th Cir. 2007) (citing cases).

state laws that "deprive citizens of their right to have access to the markets of other States on equal terms" violate the dormant Commerce Clause, as do laws requiring an out-of-state company to establish "a bricks-and-mortar distribution operation" in that state so that the company may access that state's market for the company's products. *Granholm v. Heald*, 544 U.S. 460, 473, 475 (2005).

Ohio law currently treats federally legal intoxicating hemp products as federally illegal, but state legal, marijuana products. *See* Ohio Rev. Code §§ 928.01(C), 3719.01(M), and 3796.01(A)(1). In order to cultivate, process, test, or sell marijuana, a company must apply for and obtain a license. *See* Ohio Rev. Code §§ 3796.09 and 3796.10. But any company that seeks to obtain a license must meet certain requirements, including complying with the prohibition on "dispens[ing] marijuana from, obtain[ing] marijuana from, or transfer[ring] marijuana to, a location outside of the state of Ohio." Ohio Admin. Code § 3796:6-3-01(C). And, without a license, a company may not legally sell marijuana, as defined by Ohio law, in Ohio. *See* Ohio Rev. Code § 3796.20(A)(1).

"By redefining intoxicating hemp products as marijuana, Ohio disadvantages any company which does not entirely source, manufacture, and sell its products in Ohio by requiring those companies to incur additional expenses for the privilege of participating in Ohio's market for those products." *Delta Beverage*, 2026 WL 2617770, at *6. Thus, Ohio law, through a combination of statute and regulation, violates "the Commerce Clause . . . [by mandating] 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm*, 544 U.S. at 472 (quoting *Ore. Waste Sys., Inc. v. Dep't of Env't Quality of Ore.*, 511 U.S. 93, 99 (1994)). *See also Granholm*, 544 U.S. at 473 (describing the "discriminatory character" of a state system that permitted licensed in-state wineries to directly ship their products to consumers while entirely prohibiting out-of-state wineries from directly shipping to consumers as "obvious"). Therefore, I conclude Fresh Farms has established a strong likelihood of success on the merits of their dormant Commerce Clause claim.

I conclude Fresh Farms has established the remaining required factors as well. First, a plaintiff's showing of a strong likelihood of success on the merits of a constitutional claim also establishes a finding of irreparable harm. *A.C.L.U. of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Next, enjoining the violation of constitutional rights causes no harm to others. *Churchill Downs Tech. Initiatives Co. v. Michigan Gaming Control Bd.*, 162 F.4th 631, 642 (6th Cir. 2025) (citation omitted). "[A]nd it's 'always in the public interest to prevent' constitutional violations." *Id.* (quoting *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021)).

### C. OVERBREADTH

The State of Ohio also argues Fresh Farms is not entitled to a preliminary injunction because the injunctive relief it seeks is too broad because (a) nothing in Senate Bill 56 prohibits out-of-state companies from obtaining a license to sell their products; (b) enjoining Defendants from "any application of [Senate Bill] 56 to this Plaintiff far exceeds any problem it has identified"; and (c) limiting an injunction to § 3796:6-3-01(C) would cure any commercial discrimination against out-of-state companies, who could then obtain a license from the Division of Cannabis Control. (Doc. No. 24 at 6-9).

None of these arguments are persuasive. The State of Ohio does not dispute that Ohio's marijuana statutes and regulations must be read together. *See Delta Beverage*, 2026 WL 2617770, at *3 (citing *State v. Cook*, 942 N.E.2d 357, 364 (Ohio 2010)) (further citations omitted). And, while the amendments in Senate Bill 56 to Ohio's statutory regulation of products containing more than 0.3% total THC may not explicitly prevent an out-of-state company like Fresh Farms from obtaining licensure, those amendments, acting in concert with preexisting Ohio law, do exactly that.

Moreover, the State of Ohio's assertion that the violation of Fresh Farms' constitutional rights could be remedied by an injunction limited to Ohio Administrative Code § 3796:6-3-01(A) is

only theoretical. During the June 11, 2026 hearing on the motion for a temporary restraining order in *Titan Logistics*, the State of Ohio acknowledged that no company could obtain a license because Senate Bill 56 imposed mandatory changes and conditions on the licensing process that required the Division of Cannabis Control to draft new regulations and steward them through Ohio's rule-making process. (*See also* Doc. No. 24 at 7) (acknowledging only existing licensees could sell marijuana and intoxicating hemp products because "the Division has not yet written the licensing rules for licenses issued under [Senate Bill] 56"). Thus, enjoining that regulation only would not remedy the unconstitutional exclusion of Fresh Farms from Ohio's market for intoxicating hemp products.

I conclude the State of Ohio fails to show Fresh Farms' requested relief is overbroad.

## D. Class Certification

Finally, Fresh Farms requests that I "certify a defendant class of all Ohio law enforcement officers pursuant to Federal Rule of Civil Procedure 23(b)(2)." (Doc. No. 19 at 21). But before a court may certify a class under Rule 23(b), Rule 23(a) mandates that the court must first conclude:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A court must perform a "'rigorous analysis' of [these] requirements" before it may certify a class. *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (quoting *Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982)). But Fresh Farms only offers conclusory statements in support of their argument

for class certification, which are not sufficient to permit me to conduct the analysis Rule 23 requires. Therefore, I decline to certify a defendant class at this time.

## III. Conclusion

For the reasons stated above, I grant the motion of Plaintiff Fresh Farms E Liquid LLC for a preliminary injunction, (Doc. No. 19), and enjoin Defendants from taking any criminal, civil, administrative, or regulatory enforcement action against Fresh Farms, or any person or organization possessing, selling, distributing, or consuming Fresh Farms' products, that involves, is dependent upon, or relates to the statutory definition of "hemp" as amended by Senate Bill 56, so long as the substance or product at issue is legally defined as "hemp" or a hemp-derived product under federal law.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge